Verdict not guilty.

## Case No. 15,317.

### UNITED STATES v. HARTNELL.

[Hoff. Land Cas. 207.] [1]

District Court, N. D. California. Dec. Term, 1856. [2]

MEXICAN LAND GRANTS—COLONIZATION LAWS.

Under the laws of Mexico, more than eleven leagues of land could not be granted in colonization to any one person.

Claim for eleven leagues of land in Sacramento county, confirmed by the board for six leagues, and appealed by the United States.

[This was a claim by widow, heirs, and executors of Guillermo Eduardo P. Hartnell (William E. P. Hartnell) for Todos Santos y San Antonio, five square leagues, in Santas Barbara county, granted August 28, 1841, by Juan B. Alvarado, and Cosumnes, eleven square leagues in Sacramento county, November 3, 1844, by Manuel Micheltorena, to Salvador Osio. Claim filed May 12, 1852. Confirmed by the commission August 7, 1855, for six leagues on the Cosumnes river.]

William Blanding, U. S. Atty.
Halleck, Peachy & Billings, for appellees.

HOFFMAN, District Judge. The land claimed by the appellees before the land commission was a tract of five leagues in Santa Barbara county, called "Todos Santos y San Antonio," and a tract of eleven leagues on the river Cosumnes, in Sacramento county. The commissioners confirmed to the claimant the five league tract and six leagues of the Cosumnes tract, making eleven leagues in all. From this decision the United States appeal. It is insisted on the part of the appellees, that the claim to the whole of the Cosumnes tract should be confirmed, and that the limitation of it to six leagues is erroneous. The transcript as filed in this court embraces both claims. The Todos Santos tract is situated in the Southern district; over that part of the case the court has therefore no jurisdiction. It appears from the proofs that the grant for the Todos Santos tract was duly issued; that it was occupied and cultivated by the grantee, and that judicial possession of it was formally given. It was not, however, approved by the assembly, for reasons which will presently be stated. The grant of the Todos Santos tract is dated Aug. 28th, 1841. On the third of November, 1844,

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]
[2] [Affirmed in 22 How. (63 U. S.) 286.]

[W. E. P.] Hartnell obtained another grant from Micheltorena of eleven leagues on the Cosumnes. The genuineness of both these grants is not disputed. On the sixteenth of March, 1846, these two concessions were referred by the assembly to the committee on vacant lands. On the thirteenth of April following the committee reported "that as the decree of concession for the Todos Santos tract does not express the number of leagues granted, and as another expediente has been presented for approval for eleven leagues on Cosumnes river, granted to the same party Nov. 3d, 1844, that the two expedientes be united, and as the law gives eleven leagues as the maximum, that the petitioner be required to present his title for the first named tract, in order that the number of leagues may be ascertained, and that the party may then apply for such eleven leagues in the two tracts as may suit him best." This report was approved by the departmental assembly on the twenty-second of April of the same year. The directions given to the petitioner were not complied with—not, as suggested by his counsel, because it was the governor's duty to submit the expedientes for approval, for the report expressly requires the petitioner to present his title for the Todos Santos tract, but probably because residing at a distance he had no opportunity, in the few months which intervened before the subversion of the Mexican authority, to comply with or perhaps even learn the order which the assembly had made. At all events no further action was had in the assembly on either grant. The grantee appears to have occupied his land by placing a tenant in possession of it, by whom it was cultivated soon after the date of the grant. He has also conveyed to various persons portions of it. There is nothing in the case from which any intention to abandon the land can be presumed, unless his omission to present his grant for Todos Santos to the assembly, as required, can be so construed. But such a construction is obviously inadmissible

The only question in the case is as to the extent to which the Cosumnes title should be confirmed. It is urged that the limitation of the quantity of land which the governor was authorized to grant did not apply to grants made to Mexican citizens: and secondly, that the full powers given to Micheltorena enabled him to disregard the restriction. It is unnecessary to enter into a discussion of these points, for the supreme court has in unmistakable language recognized the restriction of the powers of the governor. In U. S. v. Larkin, 18 How. [59 U. S.] 561, the court in speaking of the decree of the court below limiting the quantity of land to eleven leagues, say: "Especially should this construction be given, as the power of the governor to grant to a single person was limited so as not to exceed this quantity, according to the twelfth section of

the decree of the Mexican congress of August, 1824." The grant in that case was made by Gov. Micheltorena, November 4th, 1844, only one day after that under consideration. Independently of this decision of the supreme court, I should have no difficulty in reaching the same conclusion. It is urged that Santa Anna was at that time in possession of absolute legislative and executive authority, and that his delegation of all his power to Micheltorena conferred upon the latter authority superior to that of any existing law. But the power of the most absolute despot in civilized nations is rather the power to make, alter or abrogate the laws, than to violate them. So long as the law remains unrepealed the sovereign is bound by it, and the legality of any act done by him must be tested by the laws as they exist. Such I understand to have been the theory of the Spanish jurisconsults, and though the distinction in an absolute monarchy may be rather speculative than practical, it is of some importance when the inquiry relates to the power of a subordinate to whom the despot may in general terms have delegated his authority. That portion of the colonization laws which consisted of executive regulations, Micheltorena, under his plenary powers, might perhaps have disregarded. But the decree of the Mexican congress, from which the president himself derived his authority to make regulations on the subject, must be deemed to have remained in force until expressly abrogated. The action of Micheltorena himself in submitting these grants to the assembly is an unmistakable proof that he considered the colonization laws were to be observed by him in form and in substance, and the refusal of the assembly to approve a grant for more than eleven leagues is an emphatic declaration of what was the received construction of the law, and their idea of the governor's authority. There is no reason to suppose that the refusal of the assembly to approve for the reason assigned was by any one considered an erroneous construction of the law, or an unwarrantable encroachment on the extraordinary powers of the governor.

It is zealously urged by the counsel for the appellees, that this is no longer an open question in this court, and that grants have already been confirmed in this court for a greater quantity than eleven leagues. Such may possibly be the fact. It is enough, however, to say that in the case alluded to (that of Petaluma) the decision of the board was affirmed by this court without examination, and on the statement of the district attorney in open court, that no valid objection to a confirmation existed. It is also to be observed that in that case the grant was for ten leagues, and that the additional five leagues were acquired by purchase, the grantee having paid to the government a considerable sum of money for the land. I am not aware that until the present case it has been claimed in this court that Gov. Micheltorena or any other governor had authority to make a gratuitous concession of more than eleven leagues of land to a single individual. Certainly, no ruling to that effect has been made, and even if it had been, the construction given to the law by the departmental assembly and the supreme court would expose its incorrectness. It appears from the record that Hartnell had, before the grant issued for the Cosumnes tract, obtained a grant for two-thirds of a league in a place called Alisal. This land, however, he seems to have purchased, and the grant was probably obtained to strengthen the title previously acquired. The commissioners do not appear to have noticed this grant, but confirmed the claim for the five leagues in Todos Santos and six leagues in Cosumnes. I do not think the proof sufficiently clear as to the Alisal tract to authorize the deduction of the quantity mentioned in that grant from the six leagues of Cosumnes confirmed to the appellees. A decree must be entered confirming the claim to Cosumnes to the extent of six leagues.

[The case was taken on appeal to the supreme court, where the decree of this court was affirmed. 22 How. (63 U. S.) 286.]